IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| Grace E. Schrimsher, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 08-G-1300-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Grace E. Schrimsher, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Randall C. Stout, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform her past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as

true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The

Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff alleges she is disabled due to a number of impairments.  The ALJ found that she suffered from the following severe impairments: history of gastric bypass in 2004, fibromyalgia, pyelonephritis,[1] and arthralgia.  Record 12.  Although the plaintiff suffers from a number of physical and mental impairments, her chronic kidney disease appears to be the most serious.  On January 10, 2006, the plaintiff saw Dr. Shah, "for her recurrent urinary tract infection/pyelonephritis history."  Record 336.  Dr. Shah noted the plaintiff complained of chronic back pain in the right sacroiliac region radiating to the buttock and groin regions.  Dr. Shah noted the pain was not related to the act of urination, but was "described as sharp and fleeting, sometimes with an intensity of 10/10."  Record 338.  Dr. Shah diagnosed the following:

---

[1] Pyelonephritis is "inflammation of the kidney and its pelvis, beginning in the interstitium and rapidly extending to involve the tubules, glomeruli, and blood vessels; due to bacterial infection."  Dorland's Illustrated Medical Dictionary 1392 (28th Edition).

- Recurrent pyelonephritis with persistent right-sided hydronephrosis secondary to a congenital duplicated collecting system, S/P surgery.

- Chronic back pain, which I suspect possibly could be due to an entrapped nerve since her symptoms appear to be more neuropathic in etiology.

Record 338.  Dr. Shah's treatment plan included reviewing CT scans and ultrasounds and reviewing prior urinary cultures.  He also discussed "the implications of a nephrectomy as well as the possibility that her pain would likely not be affected or resolved after a nephrectomy.[2]"  Record 338.

On March 28, 2006, the plaintiff saw Dr. Lloyd at the UAB School of Medicine Urology Clinic for consultation about a possible nephrectomy.  Dr. Lloyd noted that additional testing would be needed, but his note states that he had a long discussion with the plaintiff "about the strong possibility that removing that right kidney would not resolve her pain issues."  Record 369.

On April 12, 2006, the plaintiff saw Dr. Shah.  He noted that testing had showed a "significantly dilated urinary bladder, to the point where 850 cc of die had to be infused before she had any urge to urinate."  Record 331.  Dr. Shah found this to be "suggest of a very enlarged bladder, likely leading to urinary

---

[2]  Nephrectomy is the "surgical removal of a kidney, a procedure indicated when chronic disease or severe injury produces irreparable damage to the renal cells." Dorland's Medical Dictionary for Healthcare Consumers, available at http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorlands/dorland/misc/dmd-a-b-000.htm.

retention and recurrent [urinary tract infections]." Record 331. Dr. Shah's noted that he "suggested to her to pursue timed voiding at least every two hours" and to continue her current medications. Record 331.

On July 7, 2006, the plaintiff saw Dr. Lloyd for a follow-up visit. Dr. Lloyd noted the plaintiff "continues to have trouble with right flank pain [and] also has recurrent urinary tract infections and had [a] suggestion of voiding dysfunction." Record 366. A urination study was performed and Dr. Lloyd noted as follows: "I do not think she needs additional treatment other than to utilize her program of timed voiding. She has done extremely well on the Macrodantin prophylaxis and we will continue on that for the time being." Record 366.

On October 11, 2006, Dr. Shah saw the plaintiff and noted she continued to have chronic back pain. Record 406. He noted the following: "She also has a neurogenic bladder and she has been pursuing timed voiding quite successfully. She has had no urinary tract infections since she instituted the timed voiding as well as the Macrobid, which she is taking every other day." Record 406. Dr. Shah observed that the plaintiff "appears keen to have a nephrectomy and I did ask her to pursue this with Dr. Lloyd...." Record 406. Dr. Shah noted that he "again encouraged her to continue to do the timed voiding." Record 406.

On November 10, 2006, the plaintiff was seen by Dr. Lloyd. Dr. Lloyd believed that the plaintiff's flank pain "was probably not related to the right kidney based on the nature of the pain and the appearance of her studies." Record 409. Dr. Lloyd noted that the plaintiff was to "continue on Macrodantin prophylaxis and timed voiding." Record 409. Dr. Lloyd stated that the plaintiff's flank pain "appears to be predominantly pain in the right sacral iliac area radiating into the right groin. It could be compatible with an ileo inguinal type neuropathy or some other musculoskeletal problem." Record 409.

At her ALJ hearing the plaintiff testified about her need for timed voiding:

> Q:  [A]s a result of the failure of the kidney and as a result of the problems you have with the bladder not functioning properly, are you required to force yourself to urinate?
>
> A:  Yes, I have to use the restroom about every hour, every hour-and-a-half, every day.
>
> Q:  Okay, when you say use the restroom every hour --
>
> A:  I have to urinate.
>
> Q:  Okay, but you just don't go in and sit down and urinate, do you?
>
> A:  No, I have to force it, because it doesn't – it just stays, so I have to push to get the fluid out, and it's painful to even do that.

> Q: Okay, how long are you normally in the restroom every hour to hour-and-a-half?
>
> A: Approximately ten minutes.
>
> Q: All right, now these ten-minute intervals that you're talking about every hour to hour-and-a-half, this was – one of your doctors, Dr. Shaw [phonetic], actually prescribed that you do this, correct?
>
> A: Correct.
>
> Q: Now if you don't do that, and you don't follow this forced urination every hour to an hour-and-a-half, at that point what happens?
>
> A: I end up with infections, kidney and bladder infections.

Record 536-37.  The vocational expert was asked about the implications of a requirement for structured urination:

> Q: If as a result of her structured urination, that would require her, every hour to an hour-and-a-half, to have to stop work and to, at that point, go to the restroom, for 10 minutes, minimum, would there be any work in the regional or national economy that such a person would be able to perform?
>
> A: Well, I think, in answer to the Judge's question, it would be the same answer to yours.  No sustained work for more than an hour at a time, that would equate to that second question he asked me.  There would be no jobs in the unskilled classification.

Record 563.

11

Because of the plaintiff's mental impairments, the ALJ found she was limited to unskilled work. Record 16. Therefore, if the plaintiff's testimony that she is required to force urination every hour to an hour-and-a-half were credited, she would be unable to work. Although the ALJ purported to have considered the plaintiff's need for timed voiding in his RFC finding, that RFC allowed for timed voiding only every two hours. The ALJ stated that he found "inconsistent and unpersuasive" plaintiff's "testimony that she has been told by Dr. Shah to urinate one to two hours [sic]." Record 18. However, the ALJ misstated Dr. Shah's recommendation stating that he "recommended that she urinate every two hours...." Record 19. Dr. Shah in fact recommended that she void "<u>at least</u> every two hours." Record 331(emphasis added). This wording strongly suggests that Dr. Shah wanted the plaintiff to void more frequently than every two hours. The medical records show that both Dr. Shah and Dr. Lloyd encouraged the plaintiff to continue timed voiding as she was practicing it. Other than his misstatement of Dr. Shah's recommendation, the ALJ articulated no specific reason for refusing to credit the plaintiff's testimony about her need for forced voiding every hour to an hour-and-a-half.[3] In fact, the ALJ recognized the plaintiff's need for timed

---

[3] The ALJ gave conclusory reasons for rejecting the plaintiff's testimony about limited daily activities, but did not directly address her testimony about the need for timed voiding except for his misstatement of Dr. Shah's recommendation.

voiding in finding that her "symptoms are significant [sic] relieved by timed voiding and Macrobid." Record 19.

Because the ALJ did not articulate specific reasons for rejecting the plaintiff's testimony that she was required to practice timed voiding every hour to an hour-and-a-half, that testimony must be accepted as true. It is consistent with Dr. Shah's recommendation to the plaintiff. Based upon the vocational expert's testimony, the plaintiff would be unable to work if she is required to pursue timed voiding as she testified. Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

Although the decision of the ALJ must be reversed on the basis of the plaintiff's need for timed voiding alone, the court notes she also testified to disabling pain and kidney stone attacks of such frequency as to preclude work. The ALJ's recited reasons for rejecting this testimony were not supported by substantial evidence, and these conditions are also disabling.

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even
> though none of the impairments, considered individually, is disabling.
> In such instances, it is the duty of the administrative law judge to
> make specific and well-articulated findings as to the effect of the

13

combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).  Several of the plaintiff's impairments are individually disabling as outlined above, and together they are without question disabling.

An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 10 March, 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.